United States District Court
Southern District of Texas
**ENTERED**
October 16, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOLMAR LEGACY GP, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-01489 |
| | § | |
| PULICE CONSTRUCTION, INC, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER**

Pending before the Court is Defendant, Pulice Construction, Inc., ("Defendant" or "Pulice")'s Motion for Summary Judgment (Doc. No. 44). Plaintiff, Dolmar Legacy GP, LLC ("Plaintiff" or "Dolmar") has responded. (Doc. No. 45). Having reviewed these documents, the record, and the applicable law, the Court hereby **DENIES** Defendant's Motion for Summary Judgment. (Doc. No. 44).

## I. BACKGROUND

This case arises out of a lease agreement ("Lease") between Dolmar and Pulice for a 3.5-acre tract of land along a portion of State Highway 288. Pulice, a construction company, leased the parcel as a lay-yard for their use in fulfilling its contract with the Brazoria County Toll Road Authority to build out Segment B of the highway. Dolmar and Pulice entered into the lease on August 2, 2017 for a term to run from August 1, 2017 to September 30, 2019, at a rate of $2,500.00 per month. At the time of the Lease, the tract of land was unimproved hay fields.

During the course of the lease term, Pulice, in connection with its project with the Brazoria County Toll Road Authority, made several improvements on the property. Pulice graded the property, laid concrete and asphalt milling, and installed modular offices and a septic system. (Doc.

No. 47, at 3). Pursuant to the Lease, Pulice was obligated to obtain any required permitting before making any improvements to the property. (Doc. No. 43, Ex. A, §§ 7, 17). Pulice obtained an Alarm Permit from the Burglar Alarm Administration, an Electrical permit, and a Stormwater Construction General Permit. (Doc. No. 47, Ex. A-3). Despite obtaining these permits, Pulice contends that because the grading and asphalt milling was intended to be temporary, it was not required to obtain a permit for it. (Doc. No. 43, Ex. F, 14:20-15:13). Pulice bases its contention on statements made by an unidentified electrical inspector who told Pulice that no further permitting would be required for the "temporary" concrete slab it was installing. (*Id.*) Pulice did not obtain these additional permits before the grading and introduction of asphalt milling. Nevertheless, the City of Houston did not issue any citations or express any concerns regarding the permitting on the lot during Pulice's lease term.

When conducting a final walk-through of the property at the end of Pulice's lease term, Pulice contends it asked Dolmar's representative if they would like for Pulice to remove the improvements to the property.[1] Pulice understood it to be their obligation under section 8 of the Lease only to return the premises in substantially the same condition as received—in other words, return it as an unimproved hay field. (Doc. No. 43, Ex. A, § 8). It contends it only left the grading and asphalt milling intact because a representative of Dolmar told Pulice to leave the grading and asphalt milling in place. Otherwise, it would have removed it. Dolmar disputes this conversation and contends that the parties had agreed before signing the Lease that these improvements to the lot would be permanent in return for a rent reduction. (Doc. No. 45, Ex. D, § 2). Based on this understanding, Dolmar expected these improvements to be permanent. Pulice disputes this

[1] The parties disagree as to whether this referred to both the concrete slab and the asphalt milling and grading or only the concrete slab. The parties appear to be in agreement that the modular offices—and related improvements—were always intended to be removed.

contention. (Doc. No. 47, at 3). Dolmar maintains that during the term of the lease, it was unaware that any of the improvements were not permitted. (Doc. No. 43, Ex. E, ¶ 3). At the end of 2020, the Pulice–Dolmar lease expired.[2] (Doc. No. 43, Ex. B).

Dolmar then leased the lot to Ansco & Associates, LLC ("Ansco") in June 2021 for the term of one year which could be renewed at the end of each term until 2026. (Doc. No. 43, Ex. C). One year later, the City of Houston Code Enforcement began issuing citations to Ansco, alerting it that it was operating on the property illegally due to unpermitted improvements on the property. (Doc. No. 43, Ex. E, ¶ 5). The City thereafter threatened Ansco with daily fines. (*Id.*). This left Ansco looking to Dolmar for relief. The parties attempted to resolve the issues for approximately one year before Ansco began threatening litigation against Dolmar. (*Id.*). Dolmar and Ansco negotiated a mutual release agreement whereby Dolmar would release Ansco from the lease and Ansco would release all claims against Dolmar. (Doc. No. 43, Ex. C).

Thereafter, the City of Houston informed Dolmar that it could not occupy, use, or sell the premises until the property was compliant. (Doc. No. 43, Ex. G, p. 10). The City also informed Dolmar that in order for the property to be compliant, it would be either required to remove all improvements or remedy the permit violations. (*Id.*). The former would require a removal of the grading and asphalt millings. The latter course of action required a more complicated fix. Dolmar chose the latter course of action. It engaged a survey company and project engineer to submit multiple rounds of plans for approval with the City of Houston. (Doc. No. 43, Ex. E, ¶ 9; Ex. G). The plan that eventually obtained approval required Dolmar to construct a large pond and ditches to comply with the City's detention and stormwater control regulations. This process lasted approximately 2 years and cost Dolmar hundreds of thousands of dollars. (Doc. No. 43, Ex. E, ¶

[2] The parties amended the original Lease on June 2, 2020 to continue for an additional 6 months to terminate on December 31, 2020. Doc. No. 43, Ex. B).

9). Pulice claims that part of the improvements did not need to be permitted because it was going to be temporary, and the problems only arose when Dolmar opted to make them permanent. It also contends that Dolmar failed to mitigate any damages it suffered by choosing the most expensive course of action to remedy the compliance issues.

Dolmar now contends that Pulice breached the Pulice-Dolmar Lease by failing to obtain the required permits before it improved the property as was required by sections 7 and 17 of the Lease. Pulice denies these allegations. Both parties have moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point

the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. ANALYSIS

Defendant Pulice moves for Summary Judgment on two theories: (1) equitable estoppel and (2) Dolmar's alleged failure to mitigate its damages. The court will assess the two arguments in turn.

### 1. Pulice fails to show that it is entitled to judgment as a matter of law under a theory of equitable estoppel.

Under Texas law, a claim of equitable estoppel requires: "(1) a false representation or concealment of material facts; (2) made with knowledge of the facts; (3) with the intention that it should be acted upon; (4) to a party without knowledge or means of obtaining knowledge; and (5) who detrimentally relies upon such representation." *PDT Holdings, Inc. v. City of Dallas*, 712 S.W.3d 597, 610-11 (Tex. 2025). "The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal." *Kramer v. Kastleman*, 508 S.W.3d 211, 217 (Tex. 2017) (referencing *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex. 1968)).

Pulice argues that Dolmar should be estopped from claiming that Pulice breached the Lease as Pulice left the improvements only after a Dolmar representative asked them to do so.[3] Pulice argues that, had it known that Dolmar would sue Pulice for leaving the improvements, it would have rejected that instruction and removed the asphalt milling and grading. (Doc. No. 44, at 7).

[3] Pulice fails at this time to point to admissible, competent evidence that a Dolmar representative said this. Rodney Roglin—corporate representative for Pulice—could not remember who this individual was nor could he provide any corroborating or authenticating context to the statement. As it currently stands, it seems unlikely to satisfy the admission by opposing party exception (or any other exception) to the hearsay rule. Fed. R. Evid. 801(d)(2).

Pulice further asserts that it always intended to remove the improvements pursuant to its obligations under section 8 of the Lease and had it been given the opportunity to remove them these problems would not have occurred. (*Id.*).

Dolmar strongly disputes the assertion that the improvements were always intended to be temporary. Dolmar argues that it was entitled to maintain any improvements made by Pulice at the termination of Pulice's lease. The Lease notes that Pulice was to use the property in connection with its construction of the "Brazoria County Toll Road's project SH288 Managed Lanes." (Doc. No. 44, Ex. A-1, § 6). Unless the property was improved pursuant to section 7 of the Lease by laying some sort of concrete or asphalt pad like the one in question, any equipment that Pulice brought onto the property would have sunk into the ground. Therefore, Dolmar argues that both parties understood that Pulice would necessarily make improvements to the property. Further, Dolmar argues that section 7 and the reduction in rent offered to Pulice under the Lease evidence a clear understanding that long-term improvements were intended to be part of bargain struck by the parties. Section 7 states that "Tenant shall leave any or all improvements intact or Tenant shall be liable to remove such fixtures at Landlord's written request." (*Id.* at § 7). Pulice paid Dolmar $2,500 per month under the Lease. (*Id.* at § 3). When the parties extended the Lease for another six months, Pulice paid Dolmar $15,000 per month. (Doc. No. 44, Ex. A-2, ¶ 2).

Pulice's only testimony regarding the alleged request from Dolmar to leave the asphalt and grading on the property is an uncorroborated hearsay statement from an unidentified person. Dolmar supplies competent summary judgment evidence regarding its expectations that the improvements would be permanent under the Lease. Therefore, a reasonable jury could find that Dolmar did not make a false representation or concealment of material facts and that Pulice did not detrimentally rely on the statement because it was aware that these improvements were

intended to be left intact. Dolmar sufficiently raises a fact issue regarding the parties' intentions with regard to improvements both at the time of entering into the Lease Agreement and at the time that Pulice left the improvements on the property. This fact issue precludes summary judgment on the question of estoppel.

**2. Fact issues exist with regard to Dolmar's reasonable efforts to mitigate its damages.**

Under Texas law, landlords have a duty to exercise reasonable care to minimize any alleged damages where avoidable with slight expense and reasonable effort. *Harris Cnty. v. Smoker*, 934 S.W.2d 714, 721 (Tex. App.—Houston [1st Dist.] 1996). Where a landlord fails to use reasonable efforts to mitigate its damages, it is barred from recovery to the extent damages could have reasonably been avoided. *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2006, no pet.). Failure to mitigate damages typically presents a reasonableness question that must be decided by a jury. *See White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Eastland 2011); *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, No. CV H-09-2539, 2010 WL 11646535, at *13 (S.D. Tex. Aug. 4, 2010), *report and recommendation adopted*, No. CV H-09-2539, 2010 WL 11646522 (S.D. Tex. Sept. 21, 2010).

Pulice asserts that Dolmar's claims are barred entirely because it failed to make reasonable efforts to mitigate their damages by engaging in allegedly unnecessary and costly remediation and by unilaterally and voluntarily releasing Ansco from their lease. While these arguments may reduce the damages award, they neither prove nor disprove liability. Failure to mitigate damages "is not an affirmative defense" to the question of liability. *Moulton v. Alamo Ambulance Serv. Inc.*, 414 S.W.2d 444, 448 (Tex. 1967).

Even if this argument could function as an affirmative defense to the question of liability, Pulice fails to show that there is no genuine dispute of material fact such that this Court may say

that Dolmar's mitigation efforts were unreasonable as a matter of law. Dolmar provides evidence that the City was threatening Ansco with fines of thousands of dollars a day and Ansco was, in turn, threatening Dolmar with litigation. (Doc. No. 43, Ex. E, ¶ 5; Ex. G, p 32). A reasonable jury could find that Dolmar was taking reasonable steps to mitigate its damages by releasing Ansco from its lease. Further, Pulice puts forth evidence that Dolmar could have brought the lot into compliance by simply removing the asphalt and grading rather than engaging in a costly process to maintain the improvements while remedying the permit violations. (Doc. No. 43, Ex. G, p. 10). Dolmar, on the other hand, supplies evidence that it was entitled to the benefit of the improvements on the property, therefore making it reasonable to have taken the more costly remedial measures. (Doc. No. 43, Ex. A; Ex. B). A reasonable jury could find that Dolmar had taken reasonable steps to maintain the value of the bargain between it and Pulice while bringing the land into compliance.

Fact issues exist regarding the reasonableness of Dolmar's efforts to mitigate its damages. Reasonableness is a fact-specific inquiry that should be left for the jury to decide. As such, Pulice's claim for summary judgment should be denied on both bases.

## IV. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Defendant's Motion for Summary Judgment (Doc. No. 44).

Signed on this 16th day of October, 2026.

Andrew S. Hanen
United States District Judge